UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALF WILLIAMS,

                        Plaintiff,

v.

HURON PINES CONDOMINIUM
ASSOCIATION, et al.,

                        Defendants.

                                          /

Case No. 2:21-cv-10878

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [7]

Plaintiff Alf Williams filed a complaint against the Huron Pines Condominium Association and three individuals that serve on the Association's Board of Directors. ECF 1. Plaintiff alleged that Defendants discriminated against him in violation of four federal statutory provisions. *Id.* at 8–10, 15–18. Plaintiff also alleged that Defendants breached a contract with Plaintiff and that Defendant Directors breached their common law fiduciary duty to Plaintiff and committed membership oppression in violation of a state statutory provision. *Id.* at 10–15.

Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). ECF 7. The Court will grant in part and deny in part the motion.[1]

---

[1] The Court decided that submission and determination of the motion without a hearing was appropriate after the Court reviewed the parties' briefing. *See* E.D. Mich. L.R. 7.1(f)(2).

1

## BACKGROUND[2]

The Association is "responsible for the management, maintenance, operation[,] and administration of the Common Elements, easements[,] and affairs" of a condominium community in Livingston County, Michigan. ECF 7-2, PgID 242. The condominium community has thirty-eight units, *id.* at 253, and the owner of each unit is a member of the Association, *id.* at 242. A detailed set of bylaws govern the Association's operations and delineate the Association's authority. *See generally* ECF 7-2. Article 11 of the bylaws establishes a three-member board of directors and vests the board with the power to administer the affairs of the Association through "all acts . . . as are not prohibited by the Condominium documents or required thereby to be exercised and done by the [owners of the units]." *Id.* at 269–71. The Association's members elect directors to staggered two-year terms at the Association's annual meeting each October. *Id.* at 267, 269–72.

In October 2017, the members elected two new directors: Preston Hopper and David Pugh. ECF 1, PgID 2–3. Hopper became the Association's Vice President and Treasurer, and Pugh became the Association's Secretary. *Id.* The pair joined Jason Milstone on the board, who had been elected Chairman of the Board and President of the Association in early 2016. *Id.* at 2.

Plaintiff, who purchased a unit in the condominium community in 2013 and accordingly became a member of the Association, alleged that the new board

---

[2] Because the Court must view all facts in the light most favorable to the nonmoving party, *see Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008), the Court's recitation does not constitute a finding or proof of any fact.

2

implemented unprecedented policies and practices that targeted Plaintiff in a discriminatory fashion. *Id.* at 2, 6–8. After three years of seemingly tranquil residence in the condominium community, Plaintiff noticed that a storm water retention area on his family's unit of land drained improperly. *Id.* at 4. Drainage water blocked the driveway. *Id.* The condominium community was built along the banks of the Huron River, which resulted in the need for storm water retention areas, drainage facilities, flood plain areas, wetland areas, and wetland buffers. ECF 7-2, PgID 258, 263. Article 6 of the bylaws makes the Association responsible "for maintenance of the Storm Water Retention Areas and Drainage Facilities." *Id.* at 258. According to Plaintiff, even after he informed the Association of the storm water retention area's improper drainage, the Association failed to provide maintenance as required by the cited bylaws. ECF 1, PgID 4.

When Plaintiff's annual assessment—a fee charged to all Association members to pay for the services that the Association will provide during the next year—came due, Plaintiff withheld payment because the Association had not maintained the storm water retention area that improperly drained onto his family's driveway. *Id.* at 4–5; *see* ECF 7-2, PgID 242–47. Plaintiff withheld payment of the annual assessment the next year as well, so by August 2018, Plaintiff was two payments behind and therefore in default. ECF 1, PgID 5.

Article 19 of the bylaws details the actions the Association may take when a member defaults. ECF 7-2, PgID 276–78. If a member defaults by failing to pay the annual assessment, the Association may pursue "foreclosure of [a] lien" or a legal

3

action for damages. *Id.* at 277. If the Association incurs costs in a proceeding to foreclose a lien or pursue damages against a member, the bylaws provide the Association with the right to recover costs and reasonable attorneys' fees. *Id.*

Defendant Directors decided to pursue the bylaws' foreclosure-of-lien remedy against Plaintiff in August 2018 given that he was two payments behind. ECF 1, PgID 5. They filed a lien against Plaintiff's unit for $650, the total cost of the two annual assessments Plaintiff had failed to pay. *Id.* Then, on April 18, 2019, Defendant Directors filed a lawsuit in state district court to collect a money judgment against Plaintiff for the two unpaid annual assessments and for an additional third annual assessment for the new year that he had failed to pay as well. *Id.* at 7. In the suit, Defendant Directors also sought costs and attorneys' fees. *Id.* at 8.

On May 14, 2019, Defendant Directors led a meeting of the Association at which they publicly discussed Plaintiff's dispute with the Association and held a vote on whether to go forward with the lawsuit. ECF 1, PgID 7–8. The members overwhelmingly voted to continue the lawsuit. *Id.* at 8. Ultimately, Defendant Directors were successful on behalf of the Association and obtained a judgment for $6,449.80 against Plaintiff, a sum that included $5,004 in attorneys' fees. ECF 1, PgID 8; ECF 1-18, PgID 111. The judgment was issued on October 10, 2019. ECF 1, PgID 8; ECF 1-18, PgID 111.

While the lawsuit was pending, Defendant Directors took further action against Plaintiff. The Association uses a portion of the annual assessments to pay for a contractor to clean each member's septic tank once every two years, a task that the

4

bylaws specifically require the Association to perform. ECF 7-2, PgID 253. Because Plaintiff withheld payment of the annual assessment and the assessment charged to each member is used to pay for the septic tank cleaning service, the Association did not arrange for a contractor to clean Plaintiff's septic tank when the tank was next scheduled for cleaning. ECF 1, PgID 4–5. On July 25, 2019, Director Hopper informed Plaintiff of the Association's decision to not arrange for the cleaning of his family's septic tank. *Id.* at 5.

Plaintiff alleged that before the new board of directors was elected in October 2017, previous boards had allowed four members to fall years behind on payments without consequences. *Id.* at 6. In other words, the previous boards of directors could have pursued the remedies for default authorized in Article 19 of the bylaws against the four families, two of whom were delinquent on payments as late as June 2016, but chose not to do so. *Id.*

Article 19 of the bylaws does contain a section titled "Non-Waiver of Right" that states "failure of the [A]ssociation or of any [c]o-[o]wner to enforce any right, provision, covenant[,] or condition which may be granted by the Condominium Documents shall not constitute a waiver of the right of the Association or of any such [c]o-[o]wner to enforce such right, provision, covenant[,] or condition in the future." ECF 7-2, PgID 277–78. But Plaintiff claims that even if the Association and Defendant Directors did not waive their right to pursue remedies for nonpayment of annual assessments, their decision to pursue such remedies for the first time in the Association's history against him was discriminatory.

5

Plaintiff and his family are the only African Americans to reside in the condominium community. ECF 1, PgID 4. And the previous four families to fall behind on payment of the Association's annual assessment were white. *Id.* at 6. Plaintiff thus alleged that race was the reason for the disparate treatment—not a newly elected board with new priorities. *See generally* ECF 1.

Plaintiff submitted the complaint through the Court's electronic filing system on April 19, 2021, and the complaint was officially docketed the next day when Plaintiff paid the filing fee. *Id.* at 18. The complaint contained eight claims, four that arose under federal statutes and four that arose under state law. *See generally* ECF 1.

Two of the federal claims involve the Fair Housing Act ("FHA"). *Id.* at 8–10, 16–17. The first FHA claim alleged that all Defendants engaged in discriminatory housing practices in violation of 42 U.S.C. § 3604(b). *Id.* at 8–10. The second FHA claim alleged that all Defendants engaged in conduct intended to interfere with Plaintiff's property rights through coercion, intimidation, and threats in violation of 42 U.S.C. § 3617. *Id.* at 16–17. The third and fourth federal claims alleged that all Defendants violated 42 U.S.C. § 1981, *id.* at 17–18, and 42 U.S.C. § 1982, *id.* at 15–16.

The first two state law claims involve breaches of contract. *Id.* at 10–13. The first contract claim relates to the Association's failure to perform the storm water retention area maintenance and septic tank cleaning for Plaintiff's unit. *Id.* at 10–11. The second contract claim relates to Defendant Directors filing the lien, commencing the lawsuit for a money judgment, and leading the Association's May 14, 2019

meeting. *Id.* at 11–13. The third state law claim involves Defendant Directors' breach of their fiduciary duty, *id.* at 13–14, and the fourth state law claim involves conduct of Defendant Directors that constituted membership oppression in violation of Mich. Comp. Laws § 450.2489, *id.* at 14–15.

Defendants responded to the complaint with a motion to dismiss all eight claims under Rule 12(b)(6). ECF 7.

## LEGAL STANDARD

Under Rule 12(b)(6), courts will grant a motion to dismiss if a complaint fails to allege enough facts "to raise a right to relief above the speculative level" or to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Courts view complaints in the light most favorable to the nonmoving party, presume the truth of all well-pleaded factual assertions, and draw every reasonable inference in the nonmoving party's favor. *Bassett*, 528 F.3d at 430. But "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" given that "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 686 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then a court must grant a motion to dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## DISCUSSION

Because the motion to dismiss attacks all eight of Plaintiff's claims, the Court will analyze in turn each claim under the Rule 12(b)(6) standard. But first, the Court must address whether the Court may properly consider documents that Defendants attached to their motion to dismiss as exhibits.

I.  Documents Attached to the Motion to Dismiss as Exhibits

Defendants attached as exhibits six documents to their motion to dismiss. ECF 7, PgID 147 (index of exhibits). At the Rule 12(b)(6) motion to dismiss stage of litigation, courts may only "consider the [c]omplaint and any exhibits attached thereto . . . [and] items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430 (citation omitted); *see also Decoration Design Sols., Inc. v. Amcor Rigid Plastics USA, Inc.*, --- F. Supp. 3d---, 2021 WL 3510834, at *2 (E.D. Mich. 2021) (Murphy, J.). Courts may also take judicial notice of public records but only if the "existence or contents prove facts whose accuracy cannot reasonably be questioned." *Ashh, Inc. v. All About It, LLC*, 475 F. Supp. 3d 676, 679 (E.D. Mich. 2020) (Edmunds, J.) (quoting *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)). When a court takes judicial notice of public records, even at the motion to dismiss stage of litigation, the court acts under Federal Rule of Evidence 201. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014). And under the Rule 201 standard, courts must "not consider the statements contained in the document for the truth of the matter asserted, even at

the motion-to-dismiss stage." *Id.* (citing *Davis v. City of Clarksville*, 492 F. App'x 572, 578 (6th Cir. 2012) and *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 476–77 (6th Cir. 2008)); *see also Passa*, 123 F. App'x at 697.

Defendants' first exhibit is the informational booklet for members of the condominium community. ECF 7-1. The primary documents within the booklet are a disclosure statement, *id.* at 187–207, and the master deed, *id.* at 211–32. A short description of the booklet and an informational statement are also included. *Id.* at 181–84. Two of the exhibits to the complaint contained a portion of the master deed. ECF 1, PgID 2, 5; ECF 1-3; ECF 1-8. The Court will consider the entire master deed found in the first exhibit to Defendants' motion to dismiss because Plaintiff referenced portions of the master deed in his complaint and the master deed contains information about the Association and the Association's septic tank cleaning obligation that is central to the complaint. *See Bassett*, 528 F.3d at 430; ECF 1, PgID 2, 5; ECF 7-1, PgID 211–232. But the Court will not consider the other documents, including the disclosure statement, because Plaintiff never referred to them in his complaint. *See Bassett*, 528 F.3d at 430. *See generally* ECF 1.

The second exhibit contains the Association's bylaws. ECF 7-2. Plaintiff referenced the bylaws several times in his complaint and attached three portions of the bylaws as exhibits. ECF 1, PgID 2, 4; ECF 1-4; ECF 1-6. The bylaws are central to Plaintiff's claims because they delineate the authority and duties of the Association and Plaintiff challenges the Association's authority and whether the Association breached certain duties. *See Bassett*, 528 F.3d at 430. *See generally* ECF 1; 7-2. The

Court will therefore consider the bylaws attached as the second exhibit to the motion to dismiss.

The third exhibit is a letter from Plaintiff to Chairman Milstone from August 2018 about the dispute over the annual assessment and the Association potentially filing a lien. ECF 7-3. Plaintiff did not reference the letter in his complaint and did not attach the letter as an exhibit. *See generally* ECF 1. While Defendants believe reference to the letter in the complaint's fourteenth exhibit allows the Court to rely on the letter, that is not enough. ECF 13, PgID 422. Simply put, unlike the master deed and the bylaws, the complaint does not rely on the contents of the letter to state any of the eight claims, including the claims that relate to the October 2018 annual meeting where the letter was read to the attendees. *See generally* ECF 1. While the letter might be helpful to rebut Plaintiff's claims, the letter would only then be central to the rebuttal and not the claims themselves. The Court will therefore not consider the letter.

The fourth exhibit is Plaintiff's docketed response in state district court to Defendants' lawsuit for a money judgment. ECF 7-4. The exhibit contains a number of documents attached to that response, including photographs, the notice signed by Chairman Milstone that the Association would pursue a lien, an email from Plaintiff to Chairman Milstone, a letter to Plaintiff from Chairman Milstone that a lien was filed, a detailed letter from Chairman Milstone to Plaintiff in response to a letter from Plaintiff, ledgers of payments and budgets, and meeting minutes from numerous Association meetings. *Id.* at 291–324. While the pleading is a public record of which

the Court can take judicial notice to demonstrate that Plaintiff responded to the lawsuit, the attached exhibits, save for the lien, have questionable accuracy absent some discovery. *See generally id.* For example, the photographs are in black-and-white and lack original quality, the letters and meeting minutes contain hearsay and were written from the skewed perspectives of the parties, and the ledgers and budgets appear piecemeal. *See generally id.* Although the Court will take judicial notice of the pleading and the lien attached as an exhibit, *id.* at 283–90, 303, the Court will not take judicial notice of the other documents. *Ashh, Inc.*, 475 F. Supp. 3d at 679 (quoting *Passa*, 123 F. App'x at 697).

The other documents would therefore have to be referenced in the complaint and central to Plaintiff's claims for the Court to consider them at the motion to dismiss stage of litigation. The photographs, ledgers, budgets, and letters are not mentioned in the complaint, so the Court will not consider them. *See Bassett*, 528 F.3d at 430. *Compare* ECF 7-4, w*ith* ECF 1. As for the meeting minutes from four Association meetings, three of the meetings occurred before 2018. *See* ECF 7-4, PgID 312–21. The fourth meeting occurred in October 2018. *See id.* at 322–24. Plaintiff referenced all four meetings in his complaint and attached the meeting minutes as exhibits. ECF 1, PgID 6–7; ECF 1-14; ECF 1-15. The meeting minutes are central to the complaint because Plaintiff alleged that they prove his family was publicly ridiculed and called out for their delinquent payments while white families who were delinquent in the past were not publicly ridiculed and called out. ECF 1, PgID 6–7.

The Court will therefore consider the meeting minutes as well. *See Bassett*, 528 F.3d at 430.

The fifth exhibit is the order of judgment obtained against Plaintiff in state district court, ECF 7-5, and the sixth exhibit is a notice from a state county court that Plaintiff's appeal of the district court judgment was considered abandoned because Plaintiff did not file a timely brief, ECF 7-6. Both documents are public records that cannot be reasonably questioned, so the Court will consider them. *Ashh, Inc.*, 475 F. Supp. 3d at 679 (quoting *Passa*, 123 F. App'x at 697).

In total, the Court will consider the following: the master deed, ECF 7-1, PgID 211–32; the Association bylaws, ECF 7-2; the responsive pleading in the state court lawsuit, ECF 7-4, PgID 283–90; the lien, *id.* at 303; the meeting minutes from four Association meetings, *id.* at 312–24; the order of judgment, ECF 7-5; and the abandonment of appeal notice, ECF 7-6.

II. <u>Merits of the Motion to Dismiss</u>

The Court will now turn to the merits of the motion to dismiss. The Court will start with the federal law claims before turning to the state law claims.

A. *Federal Law Claims*

The Court will first address the two FHA claims. After, the Court will address the §§ 1981 and 1982 claims.

1. *FHA Claims*

Defendants challenged the FHA claims on two grounds. First, Defendants argued that the limitations period expired before Plaintiff filed the complaint. Second,

Defendants argued that Plaintiff did not allege sufficient facts to demonstrate intentional discrimination.

### a.    *Limitations Period*

Defendants first argued that both of Plaintiff's FHA claims are barred by a two-year limitations period codified at 42 U.S.C. § 3613(a)(1)(A). ECF 7, PgID 152–53. The statute states:

> An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.

42 U.S.C. § 3613(a)(1)(A). In general, limitations periods begin to run on "the date when the plaintiff knew or through the exercise of reasonable diligence should have known of the injury that forms the basis of his action." *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003) (citation omitted). But when faced with an FHA claim that consisted of conduct both outside of and within the statutory limitations period, the Supreme Court held that if the claim "challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982) (footnote omitted). *Havens* thus established what has become known as the "continuing violations" exception to FHA limitations periods.

Although Plaintiff correctly cited *Havens* for the continuing violations exception, Plaintiff went on to cite *Sharpe*, a later Sixth Circuit case that, according

to him, recognized two kinds of continuing violations. *See* ECF 12-1, PgID 393. In *Sharpe*, the Sixth Circuit categorized the two kinds of continuing violations as "those alleging serial violations and those identified with a longstanding and demonstrable policy of discrimination." 319 F.3d at 266. In reply, Defendants latched onto *Sharpe*, in part because the opinion's holding would in fact prevent Plaintiff from establishing a continuing violation based on a "serial violations" theory. ECF 13, PgID 423.

In brief, *Sharpe* held that plaintiffs are precluded from using the serial violations theory to toll a limitations period. 319 F.3d at 268 (holding that *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) overturned Sixth Circuit case law on the serial violations theory). And *Sharpe* noted that, in light of *Morgan*, a plaintiff can only establish a continuing violation if they can show "a longstanding and demonstrable policy of discrimination." *Id.* (citation omitted). A plaintiff would have to establish a longstanding and demonstrable policy through evidence of discrimination in more than just the plaintiff's case. *Id.* (citation omitted). In fact, a plaintiff would need to show that the "standing operating procedure" of a defendant was to discriminate against the plaintiff's class. *Id.* at 269 (citation omitted).

But both parties' reliance on *Sharpe*, and Defendants' reliance on other Sixth Circuit cases, is misplaced. *See* ECF 12-1, PgID 393; ECF 13, PgID 422–24 (citing *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097 (6th Cir. 1995) and *Janikowski v. Bendix Corp.*, 823 F.2d 945 (6th Cir. 1987)). None of the cases involved an FHA claim. *See generally Sharpe*, 319 F.3d at 262–63 (42 U.S.C. § 1983 and Fair

Labor Standards Act claims); *LRL Props.*, 55 F.3d at 1100 (§ 1983 claim); *Janikowski*, 823 F.2d. at 946 (Age Discrimination in Employment Act claim).

Even *Morgan*, the Supreme Court case that overturned the Sixth Circuit's serial violations doctrine, involved an employment issue under Title VII of the Civil Rights Act. 536 U.S. at 104–05. And *Morgan* did not once mention *Havens* or the FHA, let alone cabin the continuing violations doctrine with respect to that statute. *See generally id.* at 104–122. Furthermore, a subsequent Sixth Circuit case that directly addressed the FHA relied on *Havens* without mentioning *Morgan. Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 210 F. App'x 469, 479–482 (6th Cir. 2006). The Court will therefore analyze whether the conduct Plaintiff alleged constituted violations of the FHA amounted to "serial violations."

But first, the Court will address whether Plaintiff properly alleged a continuing violation under a longstanding policy of discrimination theory. Plaintiff did not allege that Defendants had a policy to discriminate against any African American family that might one day live in the condominium community. *See generally* ECF 1. And Plaintiff did not even argue in his response brief that Defendants' discrimination extended beyond his own case. *See* ECF 12-1, PgID 392–94. The Court cannot therefore find a continuing violation under the longstanding policy theory. *Sharpe*, 319 F.3d at 269.

With respect to whether Plaintiff properly alleged a continuing violation under the serial violations theory, the Sixth Circuit has held that the theory requires there to be a "series of continuous and sufficiently related discriminatory acts, and at least

one of those acts [must have] occurred within the statutory period." *See Tenenbaum v. Caldera*, 45 F. App'x 416, 418–19 (6th Cir. 2002) (citations omitted). Here, the filing of the lien, the October 2018 Association meeting, the pursuit of a money judgment against Plaintiff, the May 2019 Association meeting, and the disputes over storm water retention area maintenance and the septic tank cleaning are plausibly related. In the aggregate, they plausibly constitute one course of action against Plaintiff for his failure to pay the annual assessment. As a result, the Court will consider Plaintiff to have, at the motion to dismiss stage, properly alleged a theory of serial violations. And all pleaded conduct is actionable under the FHA in the present lawsuit. If discovery reveals that the conduct is not in fact one course of action against Plaintiff for failure to pay the annual assessment, Defendants can reassert the issue at summary judgment.

But even if *Morgan*'s holding extended to FHA claims and thus cabined *Havens* to those sorts of claims, most of the alleged discriminatory conduct here took place within the limitations period.[3] Certainly, the Association placing the lien on Plaintiff's unit and the October 2018 Association meeting both occurred outside the limitations period. ECF 1, PgID 5–7. But the Association voted to continue pursuing the lawsuit for a money judgment against Plaintiff at the May 2019 Association meeting and did not actually obtain the judgment until October 2019. *Id.* at 7–8. But for the Association's vote in May 2019 and Defendant Directors following through and

---

[3] Defendant offered no argument to suggest that *Morgan* overruled *Havens*. *See* ECF 7, PgID 152–53; ECF 13, PgID 422–24.

obtaining the judgment in October 2019, Plaintiff would not have suffered at least a portion of the monetary injury alleged in the complaint. *Id.* at 10, 17. The pursuit of the money judgment against Plaintiff was thus well within the limitations period, the cutoff of which is April 20, 2019. And the complaint alleged that the Association officially terminated the septic tank service in July 2019, another instance of alleged discriminatory conduct that occurred within the limitations period. *Id.* at 5. And if the Association still did not arrange for maintenance on the storm water retention area after April 20, 2019, the conduct would also be actionable. At bottom, the Court would still allow the FHA claims to proceed with respect to the lawsuit for a money judgment against Plaintiff, the conduct at the May 2019 Association meeting, and the Association's refusal to perform maintenance on the storm water retention area after April 20, 2019 and to clean the septic tank irrespective of any serial violations. But for now, the FHA claims may proceed as to all the alleged conduct.

b.   *Merits of the FHA Claims*

Plaintiff's FHA claims fall under two distinct statutory provisions. The first, 42 U.S.C. § 3604(b), prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." The second, § 3617, states that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or

17

protected by section 3603, 3604, 3605, or 3606 of this title." While § 3617 does not explicitly discuss discrimination, to survive a motion to dismiss, a § 3617 claim must plausibly plead that defendants used their authority to disrupt a plaintiff's enjoyment of his property and that the defendants had discriminatory animus. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613–14. (6th Cir. 2012) (citation omitted).

Although Plaintiff could have pursued a disparate treatment theory of the case or a disparate impact theory of the case, Plaintiff acknowledged that he only brought the claims under a disparate treatment theory. ECF 12-1, PgID 394–95. Disparate treatment claims require a plaintiff to allege intentional discrimination. *See HDC, LLC*, 675 F.3d at 612 (citation omitted). Plaintiffs can establish intentional discrimination "through direct evidence of intentional discrimination or though circumstantial evidence," but if a plaintiff relies on circumstantial evidence, the claim faces "the burden-shifting framework first articulated in *McDonnell Douglas*." *Id.* (citation omitted).

The *McDonnell Douglas* burden-shifting framework is a three-step inquiry. At the first step, the plaintiff has the initial burden to establish a prima facia case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff satisfies the first step, at the second step the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the" conduct at issue. *Id.* If the defendant can produce such a reason, then at the third step the burden shifts back to the plaintiff to show that the reason given by defendant is in fact pretextual. *Id.* at 804.

18

Here, Plaintiff concedes that his theory of the case relies on indirect, circumstantial evidence of discrimination rather than direct evidence. ECF 12-1, PgID 395–96. And the parties' briefing, in anticipation of an order focused on *McDonnell Douglas*, included extensive discussion of the burden-shifting framework. ECF 7, PgID 153–63; ECF 12-1, PgID 394–403; ECF 13, PgID 424–25. But the parties have put the cart before the horse.

Facially, the framework is about *evidentiary* burdens. And evidentiary burdens are more appropriately considered at summary judgment or trial. The Supreme Court said as much in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). There, the Supreme Court stated that "[t]he prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement." *Id.* at 510. The Supreme Court then recognized that "[t]his Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Ultimately, the Supreme Court held that a plaintiff need not plead a prima facia case of discrimination to survive a motion to dismiss. *Id.* at 515.

But the *Swierkiewicz* decision was issued before *Twombly* and *Iqbal*, and some reasoning in *Swierkiewicz* conflicts with the two later, seminal decisions. *See id.* at 514–15 (stating that the Federal Rules of Civil Procedure do not contain heightened pleading standards that would bar lawsuits based on conclusory allegations of discrimination from proceeding). The Sixth Circuit has found that *Swierkiewicz* still stands for the proposition that a plaintiff need not "plead a prima facie case under

19

*McDonnell Douglas* in order to survive a motion to dismiss." *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). Instead, "[i]f a reasonable court can draw the necessary inference from the factual material stated in the complaint," that a defendant racially discriminated against a plaintiff, then "the plausibility standard has been satisfied." *Id.* at 610. Even "the mere existence of an 'eminently plausible' alternative, lawful explanation for a defendant's allegedly unlawful conduct is not enough to dismiss an adequately pled complaint because pleadings need only be 'plausible, not probable.'" *HDC, LLC*, 675 F.3d at 613 (quoting *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011)). *McDonnell Douglas*'s burden-shifting framework is therefore inapplicable at the motion to dismiss stage. *See Keys*, 684 F.3d at 606 ("[T]he *McDonnell Douglas* framework does not apply at the pleading stage."). The Court will only examine whether the factual material pleaded allows for a reasonable inference that Defendants' actions were racially discriminatory toward Plaintiff. *See id.* at 610.

And Plaintiff's claims satisfy the standard. Plaintiff alleged that while other condominium owners fell behind on annual payments, he was the only owner to have a lawsuit for a money judgment filed against him. ECF 1, PgID 5–8. Plaintiff also alleged that he was the only owner behind on payments for whom the Association would not fulfill their storm water retention area maintenance and septic tank cleaning duties. *Id.* at 5–6. For § 3617, Plaintiff has established a plausible inference that Defendants' conduct, especially Defendants' refusal to perform maintenance on his storm water retention area and clean his septic tank, interfered with his right to

enjoy his property free from racial discrimination. *See HDC, LLC*, 675 F.3d at 613. And the above analysis establishes that Plaintiff plausibly pleaded that discriminatory animus was behind the conduct. *Id.* at 613–14.

Defendants retorted that the other owners were not truly similarly situated to Plaintiff because the meeting minutes attached as part of their fourth exhibit show that the other owners who fell behind on payments ultimately satisfied their debts when the new board took over and announced that they would pursue liens for unpaid annual assessments. ECF 7, PgID 160–62. Defendants are right on the law: the Court can dismiss a case on a Rule 12(b)(6) motion if a plaintiff does not point to disparate treatment of similarly situated individuals. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (citation omitted). But the inference Plaintiff has drawn is at least plausible at the motion to dismiss stage, which is all the inference need be. Having pointed to plausibly similarly situated owners and alleged facts that seem to point to disparate treatment, the question of whether the owners are actually similarly situated has become a dispute. At minimum, Plaintiff has a right to obtain evidence to oppose Defendants' evidence. The Plaintiff has met the pleading standard and the Association's argument to the contrary is best addressed at summary judgment after discovery has closed.

The facts pled give rise to a plausible claim to relief under the circumstantial evidence theory of discrimination and plausibly allege that Defendants' actions constituted unlawful interference with Plaintiff's enjoyment of his property under § 3617. While Defendants appear to have several arguments that could satisfy step

21

two of the *McDonnell Douglas* burden-shifting framework, that evidence would be premature for the Court to consider at the motion to dismiss stage. And discovery could lead to Plaintiff refuting the evidence at the third step. As a result, the claims must survive.

### 2.   *Sections 1981 and 1982 Claims*

Defendants challenged Plaintiff's claims under both §§ 1981 and 1982 for Plaintiff's failure to properly allege but for causation. ECF 7, PgID 164. Both statutory provisions require plaintiffs to plead that but for race, they would not have been injured under the statutes. *See Comcast Corp. v. Nat'l Assoc. of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014, 1016–17, 1019 (2020) ("If a § 1982 plaintiff must show the defendant's challenged conduct was 'because of' race, it is unclear how we might demand less from a § 1981 plaintiff."). Accordingly, to properly allege a § 1981 violation, Plaintiff had to offer facts to plausibly suggest that but for Defendants' discriminatory conduct, Plaintiff would have been able to "make and enforce contracts," which entails "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." And to properly allege a violation of § 1982, Plaintiff had to offer facts to plausibly suggest that but for Defendants' discriminatory conduct, Plaintiff would have been able "to inherit, purchase, lease, sell, hold, and convey real and personal property."

Here, Plaintiff alleged that he was treated differently than white condominium unit owners and that the disparate treatment led to Defendants not performing

maintenance on his storm water retention area and not arranging for the septic tank cleaning as required by the Association bylaws. ECF 1, PgID 5–6. The nonperformance of these tasks, guaranteed by the bylaws and related to Plaintiff's right to hold the unit as his property, would satisfy both statutes if Defendants acted discriminatorily and the discrimination was a 'but-for cause' of the nonperformance. While Defendants pointed to a number of nondiscriminatory reasons for the nonperformance—including that they were contractually allowed to not perform the services—simply because there were other 'but-for causes' for the nonperformance does not mean that discrimination could not have been *a* 'but-for cause.' Nondiscriminatory and discriminatory 'but-for causes' are not mutually exclusive. Because Plaintiff's allegations about disparate treatment are facially plausible, they represent a plausible 'but-for cause' of the nonperformances. As a result, the two claims survive the motion to dismiss.

    B.    *State Law Claims*

The Court will now turn to the four state law claims.

    1.    *Breach of Contract as to Defendant Directors*

The first breach of contract claim alleged only that Defendant Directors failed to enforce the bylaws by authorizing the lien filing, conducting the Association October 2018 and May 2019 meetings, and suing for a money judgment against Plaintiff. ECF 1, PgID 11–13. Under Michigan law, courts must enforce unambiguous

contractual provisions as the terms dictate.[4] *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 50–51 (2003).

Here, the plain text of the bylaws allows the board of directors to pursue a lien and sue for a money judgment when a member fails to pay an annual assessment. ECF 7-2, PgID 276–78. And Plaintiff has not alleged or argued why the nonwaiver provision of the remedy section in the bylaws would not apply. *See id.* at 277–78. For the Association meetings allegations, the board of directors must hold the meetings under the bylaws, and no provision in the bylaws specifically prevents the meetings from being conducted as alleged. *See generally id.*; ECF 1. Since the plain text of the bylaws unambiguously demonstrates that Defendant Directors' conduct adhered to the bylaws, the Court will dismiss the claim as facially implausible.

### 2. *Breach of Contract as to the Association*

Plaintiff next alleged that the Association breached the bylaws by not performing maintenance on his storm water retention area and not arranging for his septic tank cleaning. ECF 1, PgID 10–11. But Article 2 of the bylaws provides that if a member is in default on the annual assessment, the Association can "discontinue the furnishing of any utilities or other services to a [c]o-[o]wner in default upon seven [7] days' written notice to such [c]o-[o]wner of the Association's intention to do so." ECF 7-2, PgID 244. Under Michigan law, courts must "read contracts as a whole, giving harmonious effect, if possible, to each word and phrase." *Wilkie*, 469 Mich. at

---

[4] The parties do not dispute that Michigan law applies, *see generally* ECF 7; ECF 12-1; ECF 13, and the Court agrees.

50 n.11 (citation omitted). The plain text of the bylaws does not provide any inkling that the provisions related to storm water retention area maintenance and septic tank service trump the nonservice remedy. *See generally* ECF 7-2. And the bylaws contain no other provision that conflicts with the nonservice remedy. *See generally id.* Thus, the provisions do not conflict, and the Court must harmoniously read the bylaws according to the plain text given that all the provisions are unambiguous. *Wilkie*, 469 Mich. at 50–51, n.11. The Court will therefore dismiss the claim because the bylaws allow for the remedy that the Association pursued.[5]

### 3.   *Violation of Defendant Directors' Fiduciary Duty to Plaintiff*

Plaintiff alleged that Defendant Directors breached their fiduciary duty to him because they had no need to pursue a money judgment lawsuit against him with a lien already recorded and because the Directors breached the bylaws by not arranging for maintenance on the storm water retention area and for the septic tank cleaning. ECF 1, PgID 1–14. Defendants moved to dismiss the claim, but in their briefs they only stated that Plaintiff failed to establish the elements of a breach of fiduciary duty. ECF 7, PgID 166–168; ECF 13, PgID 426–27. The conclusory statement that Plaintiff failed to establish the elements of a breach of fiduciary duty, without information about what elements were not established and the information or lack of information in the complaint that demonstrates the non-establishment, is not sufficient. *See*

---

[5] Whether a 'but-for cause' of the service discontinuation was discrimination based on race is a separate question than whether the Association was contractually allowed to halt the services. Even though the Association could stop service under the bylaws, the Association may have still violated the federal statutes discussed above if service was ended in a discriminatory manner.

*McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (omission in original) (quotation omitted). The Court will not engage in a potentially futile search through the case law to try to determine whether Plaintiff failed to establish an element of breach of fiduciary duty. Because Defendants could not point to how Plaintiff failed to establish the elements, the Court will deny the motion to dismiss as to the claim.

### 4.    *Membership Oppression*

Plaintiff alleged that Defendant Directors violated Mich. Comp. Laws § 450.2489 through their "willfully unfair and oppressive conduct." ECF 1, PgID 14–15. Under the statute, plaintiffs must show: "1) that they were shareholders of the corporation; (2) that defendants were directors or in control of the corporation; (3) that defendants engaged in acts; and (4) that those acts were illegal, fraudulent, or willfully unfair and oppressive to the corporation or to them as shareholders." *Deep Harbor Condo. Assoc. v. Marine Adventure, LLC*, No. 349471, 2020 WL 7765770, at *12 (Mich. Ct. App. Dec. 29, 2020) (cleaned up).

The first two elements are met. And because Plaintiff has pleaded enough facts to establish a plausible violation of the FHA, the Court will consider Plaintiff to have pleaded enough facts to meet the third and fourth elements of membership oppression

26

as well. Defendants pointed to no case law to suggest otherwise. *See generally* ECF 7, PgID 166–68; ECF 13, PgID 426–27. The claim therefore survives.

## CONCLUSION

All four federal law claims survive in their entirety. The two state law breach of contract claims failed to state a plausible claim to relief and will therefore be dismissed. But the state law breach of fiduciary duty and membership oppression claims survive.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion to dismiss [7] is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 17, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 17, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

27